**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| APRIL CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-cv-0639 |
| | ) | Judge Campbell |
| TENNESSEE DEPARTMENT OF | ) | |
| CORRECTIONS et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff April Campbell, a prisoner in custody at the Mark Luttrell Correctional Center in Memphis, Tennessee brings this *pro se* civil rights action under 42 U.S.C. § 1983, alleging that staff and medical providers at the Carter County Detention Center in Elizabethton, Tennessee and at the Tennessee Prison for Women in Nashville were deliberately indifferent to her serious medical needs, resulting in the death of her fetus. She also asserts state-law negligence claims.

The plaintiff originally filed this action in the United States District Court for the Western District of Tennessee. That court granted the plaintiff leave to proceed *in forma pauperis* but transferred the action to this Court as the more appropriate venue. 28 U.S.C. § 1391(b)(1). The plaintiff's complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I.      Standard of Review

Under the PLRA, the Court must conduct an initial review of any civil complaint filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), or brought by a prisoner-plaintiff against government entities or officials, 28 U.S.C. § 1915A, or challenging the conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the Court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant

statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U .S. at

570).

A *pro se* pleading must be liberally construed and "held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S.

97, 106 (1976)). *Pro se* status, however, does not exempt a plaintiff from compliance with relevant rules of

procedural and substantive law. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("Neither [the

Supreme] Court nor other courts . . . have been willing to abrogate basic pleading essentials in *pro se* suits.").

## II.   Factual Allegations

The plaintiff names the following as defendants in this action: (1) the Tennessee Department of

Corrections ("TDOC"); (2) Tennessee Prison for Women ("TPW"); (3) TDOC Commissioner, Derrick

Schofield; (4) Carter County Detention Center ("CCDC"); (5) Carter County Sheriff, Tom Smith; (6) Unknown

Carter County Deputy; (7) Unknown Nurses, Carter County Detention Center; and (8) Unknown Nurses,

TPW.[1]

The plaintiff was housed at CCDC at some point prior to June 27, 2014. The plaintiff asserts that

Carter County Sheriff Tom Smith was negligent in removing from her cell items provided by the medical

department, including an extra sleeping mat. He also left the plaintiff overnight in the "drunk tank" because

he "heard" she was going to sue over the lack of care received at CCDC. (ECF No. 1, at 5–6.) The plaintiff

alleges very generally that she was pregnant, that healthcare providers and staff at CCDC knew she was

pregnant, and that they failed to provide adequate treatment, resulting ultimately in the loss of her unborn

child. (*See* ECF No. 1, at 6 ("Carter County Detention Center . . . was aware of my pregnancy. . . . The

treatment I received fell beyond the statutorily required level of adequate care. My complaints were ignored

and left untreated which resulted in the loss of my child. . . . Carter County officials . . . willfully ignored my

---

[1] The plaintiff attached to her complaint proposed summonses for each of the defendants, including a summons for "MHM/Centurion." The Court presumes that MHM/Centurion may be an entity that contracted to provide medical services to inmates either at TPW or at CCDC. The complaint, however, does not name MHM/Centurion as a defendant, nor does it include factual allegations identifying the entity or suggesting a basis for liability on the part of MHM/Centurion. The Court concludes that the complaint does not name MHM/Centurion as a defendant and, even if it did, does not state a colorable claim against the organization for which relief could be granted.

situation causing me physical and emotional injury.")

The plaintiff was transported from CCDC to TPW on June 27, 2014, "in large part" because she was pregnant (she does not state to what stage her pregnancy had progressed) and needed better healthcare than could be provided at CCDC. Upon her arrival at TPW, a Carter County Deputy Sheriff, name unknown, accidentally fired a shotgun into the trunk of the vehicle in which the plaintiff remained handcuffed and sitting in the backseat. The bullets did not penetrate into the passenger area of the vehicle, and the plaintiff was not physically injured, but she could "feel the buckshot on [her] back." (ECF No. 1, at 5.) The plaintiff was thereafter left unattended in the vehicle for 10 to 15 minutes while panic and chaos ensued around her. She states that, prior to this time, she had not been feeling well and had been spotting a little bit of blood; she claims this incident exacerbated whatever problems she was having.

The plaintiff relayed this information to the medical department at TPW upon her intake but was simply told she would "probably" see the obstetrician-gynecologist the next day. The next day she again reported to the security staff and the nurses who brought medication that she was spotting and needed to see the doctor. She was again told she would see the doctor the next day. This went on for a full week during which the plaintiff tried unsuccessfully to obtain treatment. After a week, the plaintiff began bleeding in earnest, rather than simply spotting. At this point she was finally taken to see the OB/GYN. The doctor was unable to detect a heartbeat in the fetus. He arranged for an ultrasound later the same day and confirmed that the fetus had died *in utero*. The plaintiff was taken to the hospital the next day to have labor induced and to deliver the deceased fetus.

The plaintiff asserts that officials at both facilities were deliberately indifferent to her serious medical needs, in violation of her constitutional rights, and that they were negligent in their care for her. She seeks compensatory damages, unspecified equitable relief "to ensure this does not happen to another inmate," attorney fees, costs, and punitive damages.

III.    **Discussion**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### A. Claims Against the "Unknown Nurses"

The primary focus of the plaintiff's claims is that she did not receive timely and necessary medical care. The Eighth Amendment, by its terms, prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its application by the courts, the Eighth Amendment has been specifically construed to prohibit the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion). The amendment imposes affirmative duties on prison officials to "assume some responsibility for [each prisoner's] safety and general well-being," and to "provide for his basic human needs," including medical care. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court concluded that, although accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment, because it constitutes the "unnecessary and wanton infliction of pain" contrary to contemporary standards of decency. *Id.* at 104. Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation, but the Supreme Court has clarified that the question of whether a prisoner's claim based on prison officials' failure to provide adequate medical care involves both a subjective and an objective component: The objective prong asks whether the harm inflicted by the conduct is sufficiently "serious" to warrant Eighth Amendment protection. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The Sixth Circuit has defined a "serious medical need" as "either one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013) (quotation marks and citations omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To establish the subjective component of an Eighth Amendment Estelle violation, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976).

Under this standard, the Court finds, first, that the complaint states a colorable claim against the "Unknown Nurse(s)" at TPW. The nurses, as TPW employees (or employees of a medical contractor providing services to state inmates), are clearly "persons" acting under color of state law who may subject to liability under § 1983. And the plaintiff's allegations that she was pregnant, had been spotting for a significant period of time, that she had not been feeling well, that she suffered significant mental stress related to the accidental firing of the shotgun upon her arrival at TPW, and that she informed the nurses at TPW of all these facts, if true, may establish an objectively serious medical condition of which the TPW nurses and medical staff were subjectively aware. The nurses nonetheless refused to refer the plaintiff to a physician's care until her condition became markedly worse, by which time it was too late. Despite the plaintiff's receipt of some medical treatment, the Court finds, for purposes of the initial review, that the complaint states a colorable claim under 42 U.S.C. § 1983 against the unnamed nurses at TPW.

The complaint also names as defendants "Unknown Nurse(s)" at CCDC. As set forth above, the complaint contains only very general averments that the nurses at CCDC were aware of the plaintiff's pregnancy but ignored her complaints and that her treatment was inadequate. (ECF No. 1, at 6.) The complaint ,however, does not actually include any factual allegations concerning the nurses at CCDC. For instance, the plaintiff does not state what problems she was suffering while she was at CCDC, what complaints she made or when, or what the response was (other than to send her to TPW). The Court therefore finds that the complaint fails to comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and therefore fails to state a claim for which relief may be granted against any nurses at CCDC.

The claims against the Unknown Nurses at TPW will be permitted to proceed, but the claims against the Unknown Nurses will be dismissed without prejudice for failure to allege sufficient facts to state a claim

against them for which relief may be granted.

### B. Claims Against Sheriff Tom Smith

The plaintiff sues Carter County Sheriff Tom Smith based on his refusal to provide extra food to her and other pregnant inmates. (*See* ECF No. 1, at 2.) She also alleges that Sheriff Smith was "negligent" in taking away her extra sleeping mat that had been provided by medical to accommodate her discomfort during pregnancy, and that he "left [the plaintiff] over night in the drunk tank because he 'heard' [she] was going to sue over the lack of care received in his facility." (ECF No. 1, at 5–6.)

Sheriff Smith is a person acting under color of state law who may be subject to liability under § 1983. The plaintiff's allegations, however, fail to suggest that he was deliberately indifferent to her serious medical needs. She does not allege that she went hungry or lacked adequate nutrition at CCDC, or that the conditions at CCDC actually contributed to the death of her fetus. The complaint therefore fails to allege facts suggesting that the sheriff violated the plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment. Nor does she indicate injury resulting from the deprivation of an extra sleeping mat, for purposes of stating a state-law negligence claim against the sheriff. These claims will be dismissed for failure to allege sufficient facts to state a colorable claim. Fed. R. Civ. P. 8(a).

However, the complaint, liberally construed, arguably states a colorable claim against Sheriff Smith for violation of the plaintiff's First Amendment rights. Under the First Amendment a prisoner has the right to freedom of speech and the right to petition the government for redress of grievances. It is a violation of the Constitution to retaliate against a prisoner based upon the prisoner's exercise of his First Amendment rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To state a viable First Amendment retaliation claim, a plaintiff is required to plead and allege facts sufficient to show that: (1) she was engaged in conduct protected by the First Amendment; (2) an adverse action was taken against her that would deter a person of ordinary firmness from engaging in that protected conduct; and (3) the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Thaddeus-X*, 175 F.3d at 394. The plaintiff here alleges that Sheriff Smith made her spend a night in the "drunk tank" when he heard she was "going to sue over the lack of care." (ECF No. 1, at 6.) The Court will presume, for purposes of the initial review only, that a night in the "drunk tank" constitutes an adverse action. Second, although the plaintiff does not state that she had actually engaged in protected conduct by filing a lawsuit, her allegations suggest that she was in the

process of preparing a complaint and that the sheriff believed that she was engaging in conduct protected by the First Amendment. Again, solely for purposes of the initial review, the Court finds that the complaint states a colorable claim against Sheriff Smith for First Amendment retaliation. That claim will be permitted to proceed.

### C.      Claims Against "Unknown Deputy"

The plaintiff clearly fails to state a claim under § 1983 against "Unknown Deputy" based on his negligent firing of the shotgun, since § 1983 pertains to deliberate rather than merely negligent conduct. *See Farmer v. Brennan*, 511 U.S., 825, 835 (1994) (noting that the deliberate-indifference standard "describes a state of mind more blameworthy than negligence"); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("[C]onduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety."). The Court nonetheless concludes that the plaintiff's allegations arguably state a negligence claim against the Unknown Deputy, which may proceed under the Court's supplemental jurisdiction. 28 U.S.C. § 1367(a).

### D.      Claims Against CCDC and Carter County

The claim against CCDC is subject to dismissal, first, because the detention facility is a building, not a person subject to liability under § 1983 or under state law. *See Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (county jail is a department of the county and not a legal entity susceptible to suit). Nonetheless, in light of the plaintiff's *pro se* status, the Court liberally construes the complaint as asserting a claim against Carter County itself.

The county is a municipality that is considered a legal "person" that may be subject to liability under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a municipality cannot be liable under § 1983 solely on the basis that it employs a tortfeasor, because "*[r]espondeat superior* is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). Instead, a municipality can be held responsible for an alleged constitutional deprivation only if there is a direct causal link between a policy or custom of the municipality and the alleged constitutional violation. *Monell*, 436 U.S. at 694; *see also Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) ("[T]o satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.' " (citations omitted)). The plaintiff here fails to

identify a policy specifically attributable to the county regarding the treatment of pregnant inmates, or to include any specific factual allegations about the ways in which her treatment at CCDC violated the constitution. The complaint fails to state a claim under 42 U.S.C. § 1983 against CCDC or Carter County itself.

There is nonetheless a possibility that Carter County may be vicariously liable, under a *respondeat superior* theory, for the negligence of its employees, including the Unknown Deputy. Because the Court will permit the plaintiff's negligence claim against the Unknown Deputy to proceed, it will also retain supplemental jurisdiction over a possible negligence claim against the County as well.

### E.    *Claims Against TDOC and the Prison*

The claims against TDOC and TPW, whether under § 1983 or state law, are subject to dismissal on sovereign immunity grounds.

The Eleventh Amendment protects states from suits brought by citizens in federal court, whether under state or federal law. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). State agencies and departments are protected by the state's sovereign immunity to the same extent as the state itself. *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Cox v. Shelby State Comm. Coll.*, 48 F. App'x 500, 504 (6th Cir. 2002). The only exceptions to a state's immunity are (1) if the state has consented to suit or (2) if Congress has properly abrogated a state's immunity. *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).

Neither of these exceptions applies to § 1983 suits against the state of Tennessee or its agencies. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (reaffirming that Congress did not abrogate states' immunity when it passed § 1983). Nor has Tennessee waived its immunity to state-law claims against it in federal court. *See* Tenn. Code Ann. § 20-13-102(a) ("Sovereign immunity. . . . No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state . . . ."); *id.* § 9-8-307 (vesting exclusive jurisdiction in the Tennessee Claims Commission for negligence claims, among others, against the state).

The claims against TDOC and TPW will therefore be dismissed on the basis that the defendants are entitled to sovereign immunity.

**F.      Claims Against TDOC Commissioner Derrick Schofield**

While defendant Derrick Schofield in his individual capacity is a person acting under color of state law for purposes of a claim under § 1983, the complaint fails to state a claim against him in his individual capacity because it does not allege the personal involvement of Commissioner Schofield in any of the acts giving rising to the plaintiff's claims. Similarly, the complaint fails to allege a negligence claim against Commissioner Schofield.

Insofar as the plaintiff seeks to assert a § 1983 claim against Commissioner Schofield in his official capacity, such a claim is tantamount to a claim against the state itself. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Consequently, her claim for damages against Commissioner Schofield in his official capacity is barred by the Eleventh Amendment.

The Eleventh Amendment does permit suits against state officials in their official capacities for prospective injunctive relief. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Ex Parte Young*, 209 U.S. 123, 155–56 (1908); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008). The plaintiff here purports to seek injunctive relief in her complaint, but she does not specifically ask for injunctive relief against the state or indicate what form of injunctive relief would be appropriate. Nor has she alleged that her injuries resulted from a policy or practice of the state itself. "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted). "The focus of the inquiry remains on the allegations only; it 'does not include an analysis of the merits of the claim.'" *Brunner*, 548 F.3d at 474 (quoting *Verizon Md., Inc.*, 535 U.S. at 646). Complaints "based entirely upon past acts and not continuing conduct that, if stopped, would provide a remedy to [the plaintiff]" do not implicate the doctrine. *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003). Because the allegations in this case concern only past conduct, the Court concludes that the complaint fails to state a claim against Commissioner Schofield in his official capacity for which relief may be granted for prospective injunctive relief.

**IV.      CONCLUSION**

Construed liberally, the complaint states colorable claims under § 1983 against the "Unknown Nurses"

at TPW and Carter County Sheriff Tom Smith, and state-law claims over which this Court has supplemental jurisdiction against "Unknown Deputy" of Carter County and Carter County itself. These claims, for purposes of the initial review, will be permitted to proceed. The remaining claims in the complaint will be dismissed under the PLRA.

An appropriate order is filed herewith.


TODD CAMPBELL
United States District Judge